UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JACOB SMITH, | Case No.: 3:22-cv-00522-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 32 |
| ISIDRO BACA, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 32, 32-1 to 32-13, 34-1.) Plaintiff filed a response. (ECF No. 40.) Defendants filed a reply. (ECF No. 41.)

After a thorough review, it is recommended that Defendants' motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC).

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment unsafe conditions of confinement claim against defendants Baca, an NDOC Doe Director later identified as Charles Daniels, and a Doe Caseworker, later identified as Edward Gibson. (ECF Nos. 3, 16, 24.) Plaintiff alleges Defendants knew that inmates in Unit 1 at WSCC

had tested positive for COVID-19 and were in quarantine, but nevertheless, Defendants transferred them to Plaintiff's housing unit, and Plaintiff contracted COVID-19.

Defendants move for summary judgment, arguing they responded reasonably to the risks created by the COVID-19 pandemic. They assert that the implemented policies requiring precautionary measures to address and prevent or slow the spread of the virus, and in fact, stopped all bed moves. They argue that even if the precautionary measures ultimately failed in preventing Plaintiff from becoming infected with the virus, there is no evidence that the measures they undertook were unreasonable. Defendants also contend that Plaintiff cannot show he was damaged as a result of contracting COVID-19. Finally, they argue that they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Conditions of Confinement**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const., amend VIII. It requires prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As such, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27(1984)). It is a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" that violates the Eighth Amendment. *Id*. at 828. Deliberate indifference consists of an objective and a subjective component.

First, the inmate must demonstrate that the deprivation was, objectively, "sufficiently serious." *Id*. at 834 (citation omitted). "[T]he resulting risk must not be one that 'society chooses

4

to tolerate.'" *Hampton v. State of California*, 83 F.4th 754, 766 (9th Cir. 2023) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. That is, prison officials must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must have actually "draw[n] the inference." *Id.* "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

The Ninth Circuit held in *Hampton* that in 2020, "the risk of contracting COVID-19 was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency" and satisfies the Eighth Amendment's objective standards. *Hampton*, 83 F.4th at 766; *see also Maney*, --- F.Supp.3d at ---, 2024 WL 2288807, at *16 ("Courts have consistently concluded that the involuntary exposure to COVID satisfies the Eighth Amendment's objective prong.").

As such, the court will turn to the subjective component of Plaintiff's Eighth Amendment claim.

"In the context of a conditions of confinement claim related to a defendant's response to COVID[-19], 'the inquiry is not whether prison officials perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they responded reasonably to the risk.'" *Maney v. Oregon,* --- F.Supp.3d ---, 2024 WL 2288807, at *17 (D. Or. Apr. 10, 2024) (quoting *Jones v. Pollard*, No. 21-cv-162-GPC (BGS), 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023)).

5

The Governor of the State of Nevada, Steve Sisolak, issued an emergency declaration on March 12, 2020, to facilitate the State's response to the COVID-19 pandemic, and on March 13, 2020, the President of the United States, Donald J. Trump, declared a nationwide emergency. (ECF No. 32-1.)

NDOC undertook to implement various policies and protocols in response to COVID-19. As of November 6, 2020, NDOC required all individuals testing positive for COVID-19 be symptom free for 72 hours with two negative COVID-19 tests taken at least 48 hours apart before an inmate could end the quarantine period and return to general population. (ECF No. 32-2 at 6.)

It is undisputed that Plaintiff was housed in Unit 4 at WSCC during the relevant timeframe, and that he tested positive for COVID-19 in November 2020. (ECF Nos. 32-9, 34-1 at 25.)

Defendants submit a declaration from Nethanjah Breitenbach, who is currently the warden at Lovelock Correctional Center (LCC). During the timeframe pertinent to Plaintiff's allegations, Breitenbach was acting associate warden at Northern Nevada Correctional Center (NNCC). The warden states that she has personal knowledge of the COVID-19 policies and protocols at WSCC, as NDOC implemented the same policies and protocols throughout its institutions. According to Warden Breitenbach, in November and December 2020, WSCC's "policies from their medical professionals were to 'quarantine in place' as to slow and/or stop the spread of COVID-19." (ECF No. 32-3, Breitenbach Decl. ¶ 8.) At the time, WSCC was under guidance from the CDC that COVID-19 transmission could take up to 72 hours to come to fruition. (*Id*. ¶ 9.) The warden states that moving inmates to other units could further contaminate the facility, so WSCC was forced to stop all bed moves and institutional moves. (*Id*. ¶ 10.)

  Defendants also submit a declaration from former NDOC Medical Director Dr. Michael Minev. (ECF No. 32-5.) The declaration is dated **June 12, 2020**, and was made in connection with another lawsuit: *Kerkorian, et al. v. State of Nevada Department of Corrections*, 2:20-cv-00950-RFB-BNW.[1] Dr. Minev attests to protocols implemented with respect to COVID-19 at NDOC at that time and discusses inmate Kerkorian's medical conditions.

  The court finds Dr. Minev's declaration is of very limited relevance. First, the declaration pre-dates the incident that is the subject of this Plaintiff's complaint by roughly five months. Second, the declaration contains a discussion of another inmate's medical conditions, but no discussion of this Plaintiff. Finally, The declaration contains no information regarding Plaintiff's contention that Defendants did not follow COVID-19 policies and protocols when they moved inmates who were quarantining due to COVID-19 into Plaintiff's unit and he subsequently tested positive for COVID-19.

  Moreover, Plaintiff's verified complaint directly refutes Warden Breitenbach's statement that WSCC stopped all bed moves. Plaintiff claims that inmates in Unit 1 were known to have tested positive for COVID-19 and were supposed to be in quarantine, but as a result of WSCC implementing some sort of level system regarding inmate workers, more than 20 inmates from Unit 1 were moved to Plaintiff's unit—Unit 4. Defendants' evidence includes a press release from NDOC dated November 13, 2020, which states that an additional 331 offenders at WSCC

---

[1] Dr. Minev's declaration also contains exhibits or attachments, in violation of Local Rule IC 2-2(a)(3). The attachments, in turn, related to yet another case, *Williams v. Warden of Southern Desert Correctional Center*, 2:20-cv-00639-RFB-BNW, and do not appear to have any specific relevance to this lawsuit. It is not the court's responsibility to sift through voluminous documents to determine whether any documents exist that are relevant to *this* litigation. Magistrate Judge Baldwin admonished the Attorney General's Office about the use of this declaration in another action, *Allen v. Daniels*, No. 3:21-cv-00524-CLB, 2023 WL 7301596 (D. Nev. Nov. 3, 2023), yet the *same* declaration was used again in a motion for summary judgment filed over six months later.

7

tested positive for COVID-19, and the facility was on lockdown. (ECF No. 32-8 at 2.) The timing of this press release correlates with Plaintiff's allegations of the bed moves and increase in COVID-19 cases at WSCC. Plaintiff's grievance around this time period also corroborates his claim: On December 10, 2020, Plaintiff filed a grievance claiming that the administration knew COVID-19 was present on the yard, but still proceeded with mass bed moves, and Plaintiff ended up testing positive for COVID-19 and became very sick with aches, pains, loss of taste, smell and congestion. (ECF No. 32-10 at 7-8.) The responses to the grievance blamed the spread of the virus within WSCC on a delay in test results, but did not address Plaintiff's contentions regarding the bed moves. (ECF No. 32-10 at 2, 6.)

Plaintiff has raised a genuine dispute of material fact as to whether Defendants responded reasonably to abate the COVID-19-related risk of harm to Plaintiff or whether they disregarded a substantial risk of harm. Specifically, he raises a dispute as to whether Defendants were following or enforcing their own bed move and quarantine policies, and whether they moved inmates who were known to have COVID-19 from quarantine into Plaintiff's unit. *See Hampton*, 83 F.4th at 767 (that the prison officials "did not take precautions to avoid transferring COVID-positive inmates … shows a conscious disregard to the health and safety" and prison employees and inmates); *Maney*, --- F.Supp.3d at ---, 2024 WL 2288807, at *26 (there was evidence that the corrections department enacted policies and procedures in response to COVID-19, but there was a question of fact as to whether these policies and procedures were actually implemented and enforced, including whether they minimized the mixing of individuals from different housing units and whether they enforced their quarantine policy).

Defendants argue that summary judgment should be granted in their favor because Plaintiff cannot demonstrate he was damaged as a result of contracting COVID-19. The court

disagrees. Defendants admit that Plaintiff contracted COVID-19, and acknowledge Plaintiff was seen multiple times by a mental health provider for distress related to contracting COVID-19. (ECF No. 41 at 2:2-4.) Plaintiff claimed in his grievance that he had become very sick after testing positive with the virus. On February 3, 2021, Plaintiff sent a kite stating that he needed to see a provider for nose and chest congestion. (ECF No. 34-1 at 41.) He sent a kite on February 21, 2022, to check out his old COVID-19 symptoms. (ECF No. 34-1 at 39.) On February 26, 2022, Plaintiff sent a kite asking to see a nurse concerning COVID-19 side effects, including lack of smell and taste, headaches, and blurry vision. (ECF No. 34-1 at 38.) On March 18, 2022, he submitted a kite that he still could not smell or taste, and had a headache and blurry vision. The doctor acknowledged his symptoms could be related to a cold *or* residual COVID-19 issues. (ECF No. 34-1 at 27.) These facts are sufficient to raise a genuine dispute so as to defeat Defendants' motion for summary judgment.

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hampton*, 83 F.4t at 765 (citations and quotation marks omitted).

First, taking the facts in the light most favorable to Plaintiff, a fact finder could come to the conclusion that Defendants violated Plaintiff's rights under the Eighth Amendment if they moved inmates who had tested positive and were quarantining due to COVID-19 into Plaintiff's unit.

Second, the Ninth Circuit held in *Hampton* that the right was clearly established: "The Eighth Amendment requires [prison officials] to reasonably protect inmates from exposure to

serious diseases." *Hampton*, 83 F.4th at 770. "[A]ll reasonable prison officials would have been on notice in 2020 that they could be held liable for exposing inmates to a serious disease, including a serious communicable disease." *Id*. "Although COVID-19 may have been unprecedented, … the legal theory that Plaintiff[ ] assert[s] is not." *Id*. (citation and quotation marks omitted). Therefore, Defendants are not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Defendants' motion for summary judgment (ECF No. 32).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 10, 2024

                                      Craig S. Denney
                                      United States Magistrate Judge